UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ) | |
| **HIRAM GATHURU, on behalf of himself and** ) | |
| **all others similarly situated,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **07-40169-FDS** |
| ) | |
| **CREDIT CONTROL SERVICES, INC., d/b/a** ) | |
| **CREDIT COLLECTION SERVICES,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM AND ORDER ON
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>**

**SAYLOR, J.**

This is a civil action alleging the imposition of undisclosed and unauthorized debt collection fees. Plaintiff Hiram Gathuru seeks individual and class relief for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and Mass. Gen. Laws ch. 93A.

After Gathuru fell behind on his credit card payments, the issuing bank referred his account to a collection agency, which added its fees to his outstanding balance. Gathuru challenges the legitimacy of those fees and the agency's failure to identify the fees in its collection notices. The complaint asserts four claims: collection of a fee not authorized by the underlying agreement or state law, in violation of FDCPA §§ 1692e(2)(B) and 1692f(1) (Count 1); attempted collection of a fee that the creditor had not incurred, in violation of FDCPA §§ 1692e(2)(B) and 1692f(1) (Count 2); failure to disclose a collection fee in violation of 15

U.S.C. § 1692e (Count 3); and failure to disclose a collection fee in violation of Mass. Gen. Laws ch. 93A, 209 Mass. Code Regs. 18.16, and the FDCPA (Count 4).  Counts 1 and 2 are brought individually; Counts 3 and 4 are brought as putative class actions.

Defendant has moved for summary judgment as to all claims; plaintiff has cross-moved for partial summary judgment as to liability on the individual (that is, not class action) claims asserted in Counts 3 and 4.  For the following reasons, defendant's motion for summary judgment will be granted as to Count 1 and denied as to the remaining claims; plaintiff's motion for partial summary judgment will be granted; and summary judgment for plaintiff will enter as to liability on Count 2.

## I. Background

Except where noted, the following facts are not in dispute.

### A. Credit Card Application and Agreement

On October 20, 1999, Hiram Gathuru applied to Digital Federal Credit Union ("DFCU") for a Visa credit card.  As part of the application, he agreed that his account with DFCU would be subject to the terms and conditions of the Visa Credit Card Agreement and Federal Truth-In-Lending Disclosure Statement (the "Agreement").

Under the Agreement, Gathuru agreed "to pay [DFCU's] collection costs, reasonable attorney's fees, and court costs should they become necessary."  In addition, he agreed to "repay [DFCU] according to the terms of this Agreement for all purchases, Advances, FINANCE CHARGES, Late Charges, Overlimit Fees, and collection costs arising from the use of the Account."  He does not dispute that under the Agreement he was responsible for collection costs and attorney's fees.

### B.     Debt Accrual and Default

DFCU approved the application, although with a lower credit limit. Gathuru then used his Visa card for personal purposes. DFCU provided him monthly statements concerning the account, documenting the amount of debt he had incurred exclusive of any collection fees. Gathuru testified that he always knew his current balance.

At some point, Gathuru defaulted on his payment obligations. As a result, DFCU referred his account to Glenn Associates, a collection agency. After his account was referred to Glenn Associates, Gathuru contacted DFCU and arranged to pay $678 of the balance owed.

In October 2006, Gathuru's overdue account was referred to a new collection agency, Credit Collection Services ("CCS"). CCS is licensed as a "debt collector" by the Massachusetts Division of Banks. CCS and DFCU had a preexisting business relationship dating back to April 2003, memorialized in a contract titled "CCS Collection Agreement."

### C.     Collection Efforts and Payments

At the time of the referral to CCS, Gathuru owed a balance of $1544.96 and was considered a "Second-Placement Account" under the terms of the CCS Collection Agreement. CCS had negotiated a collection fee amount with DFCU whereby it would collect 30% of any amount it ultimately recovered from Gathuru. DFCU instructed CCS to add the 30% collection fee to Gathuru's indebtedness.[1]

On January 2, 2007, CCS sent Gathuru a notice informing him that he owed $2,008.44 in

---

[1] Although none of these facts are disputed, the Court notes that the compensation schedule attached to the CCS Collection Agreement appears to provide for 40% fees for all funds actually recovered from Second-Placement accounts referred for collection, not 30%.

connection with his DFCU account and directing him to pay accordingly.[2] The $2,008.44 balance CCS quoted included $1,544.96 in principal owed to DFCU and $463.48 (30% of the principal) in collection fees added by CCS. The notice, however, did not itemize the two amounts. Instead, it listed the aggregate sum as an "AMOUNT DUE" in two separate places.

Upon receipt of the notice, Gathuru contacted DFCU. He was informed that his actual debt was approximately $1,500. Gathuru then made three payments over the next several weeks.

First, on January 19, 2007, he made a $500 payment to DFCU. DFCU advised CCS of the payment, which then invoiced DFCU for $150 in accordance with its 30% collection fee agreement.

Second, on January 31, 2007, he made another payment of $508.44. The party to whom it was paid is disputed. According to defendant, he made this payment directly to CCS, prompting CCS to pay $355.91 to DFCU while retaining $152.53 (30%) as its collection fee on the recovery; according to plaintiff, he made the payment to DFCU.

Third, on February 6, 2007, he made another $500 payment to DFCU. DFCU advised CCS, which again invoiced DFCU for its $150 collection fee. That same day, Gathuru contacted DFCU; the company's member delinquency notes reflect that he indicated that he "doesn[']t want to pay collection fee charged by CCS." (Sibley Aff. at Ex. F).

On February 28, 2007, CCS sent Gathuru another collection notice, now reflecting a remaining balance of $500. Again, the notice did not itemize the amounts or indicate what was owed to DFCU and what was owed to CCS. Believing that he had paid his balance in full,

---

[2] In its statement of undisputed facts, defendant incorrectly reported this figure as $2,088.44. *Compare* Pl. 56.1 Stmt. at Ex. A *with* Def. 56.1 Stmt. ¶ 16. Plaintiff, however has not noted the discrepancy, nor is it material.

Gathuru contacted CCS directly. CCS confirmed that he still owed $500. According to Gathuru, he then called DFCU for an explanation of the $500 charge. DFCU explained that the $500 represented a 30% collection fee charged by CCS. Gathuru contends that it was at this time that he first learned that CCS had charged him a collection fee.[3]

On May 8, 2007, Gathuru sent a demand letter under Mass. Gen. Laws ch. 93A, § 9 to CCS.

On June 14, 2007, Gathuru filed a complaint on behalf of himself and a purported class of Massachusetts residents who, within one year of the filing date of the complaint, received written communication from CCS concerning a consumer debt where the asserted balance included an undisclosed collection fee or charge.

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Dennis v. Osram Sylvania, Inc.*, 549 F.3d 851, 855 (1st Cir. 2008) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

"Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment per se. Cross motions simply require us to determine

---

[3] CCS disputes this, noting that DFCU records report Gathuru's displeasure with the collection fees as early as February 6, 2008. The potential inconsistency is not material to disposition of the cross-motions.

5

whether either of the parties deserves judgment as a matter of law on facts that are not disputed. As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the party against whom summary judgment has entered." *Wightman v. Springfield Terminal Ry.*, 100 F.3d 228, 230 (1st Cir. 1996) (internal citations omitted).

## III. Analysis

In essence, plaintiff contends that the collection fees were not "expressly" authorized by the agreement or permitted by law and that those fees could not be "lawfully received" by CCS because they had not yet been earned.[4] He further contends that failure to separate out those fees in the notices he received constituted a false, deceptive, and misleading representation. Thus there are essentially three components to plaintiff's claims, governed by three provisions of the FDCPA.[5]

First, he challenges the validity of adding the 30% collection fee to his account balance, contending that the Agreement does not authorize imposition of a percentage-based fee. According to plaintiff, this violates § 1692f(1), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is *expressly authorized* by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1) (emphasis added).

Second, he contends that the 30% fee had not actually been incurred by the creditor when

---

[4] Whether CCS intended to violate the law does not affect its liability; the FDCPA "imposes strict liability on debt collectors for their violations." *Harrington v. CACV of Colorado, LLC*, 508 F. Supp. 2d 128, 132 (D. Mass. 2007).

[5] The complaint cites *both* §§ 1692e(2)(B) and 1692f(1) in support of *both* Counts 1 and Count 2, although this appears to be in error.

CCS attempted to collect it, also in violation of the FDCPA. Section 1692e(2)(B) prohibits a debt collector from making a false representation of "any services rendered or compensation which may be *lawfully received* by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2)(B) (emphasis added).

Third, he contends that the notices he received were false and misleading under the FDCPA, in that they failed to disclose the inclusion of collection fees in the balance alleged to be due. False representations of "the character, amount, or legal status of any debt" are prohibited by § 1692e(2)(A).

### A.    The Legality of a Percentage-Based Fee

The first issue is whether the 30% collection fee is "expressly authorized" by contract or "permitted by law." Because the Court concludes that a percentage-based fee is expressly authorized by the Agreement, it does not reach the issue of whether it was permitted by law.

It is undisputed that under the Agreement, plaintiff is required to pay DFCU's "collection costs." It is likewise undisputed that, under the CCS Collection Agreement, if CCS were successful in its collection efforts, DFCU would owe CCS 30% of any monies recovered. Plaintiff contends, however, that the Agreement does not authorize DFCU to add a percentage-based fee assessed by a third-party collection agency. Plaintiff notes that there is no language in the contract that "specifically permits a creditor to charge a percentage collection fee and recover this from the debtor." (Pl. Opp. at 5-6).

The Agreement, in fact, expressly authorizes the recovery of all "collection costs." That term is not modified or narrowed in any way. In particular, it is not modified by the adjective "reasonable"—in contrast to the phrase that immediately follows it, "reasonable attorney's fees."

The Agreement is thus expansive: it permits the recovery of all "collection costs," without any restrictions or limitations. It is true, of course, that it does not expressly state that a percentage-based fee is included within the phrase "collection costs." But neither does it expressly permit an hourly fee, a flat fee, out-of-pocket expenses, or any other subset of "collection costs." It is a broad, inclusive term, and necessarily encompasses any types of costs that reasonably fall within that category. The argument that the contract must expressly state that a percentage-based fee is recoverable would mean that *no* actual collection costs could be recovered, because none are "expressly" specified. That interpretation would render that portion of the contract meaningless.[6]

The case law addressing this issue is inconsistent (in part due to the variation in contractual arrangements), and the reasoning is not always explicit. For example, in *Kojetin v. C U Recovery, Inc.* (*Kojetin II*), 1999 U.S. Dist. LEXIS 10930 (D. Minn. Mar. 29, 1999), *aff'd per curiam*, *Kojetin III*, 212 F.3d 1318 (8th Cir. 2000), the court interpreted the phrase "reasonable costs incident to collection" to include only "actual costs," and then determined that "actual costs" could not include a percentage-based fee.[7] In *Stolicker v. Muller, Muller, Richmond, Harms, Myers, and Sgroi, P.C.*, 2005 U.S. Dist. LEXIS 32404 (W.D. Mich. Sept. 8, 2005), the

---

[6] Furthermore, it would be difficult to specify in advance precisely what kind of "collection costs" were likely to be incurred. *See Cohen v. Beachside Two-I Homeowners' Ass'n*, 2006 U.S. Dist. LEXIS 44978, at *39-*37 (D. Minn. June 29, 2006) (addressing recovery of attorney's fees; "The governing documents do not set forth a specific amount of fees to be collected because of the difficulty of determining in advance the legal effort each situation involving assessment collection and foreclosure will require[].").

[7] Implicit in the magistrate's opinion is that the costs of collection for which the debtor could be held responsible were only the out-of-pocket costs incurred by the party doing the collecting—not the *creditor*'s costs of collection, which would include the fee payable to the debt collector. *See Kojetin v. C.U. Recovery, Inc.* (*Kojetin I*), 1999 U.S. Dist. LEXIS 1745, at *14 (D. Minn. Feb. 17, 1999) ("[W]e find that collection agency fees must relate to costs that are incident to collection.").

8

court held that the phrase "reasonable attorney's fee" could never be a fixed or liquidated amount.[8] At least one court has taken a somewhat extreme approach, holding that the debtor must have actual knowledge of a fee before it can be deemed "expressly authorized" by the agreement. *See Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 408 (3d Cir. 2000) ("Although the agreement need not be in writing, we believe the term 'expressly authorized by the agreement creating the debt' requires some actual knowledge by the consumer during the course of the transaction which gives rise to the debt.").[9]

The cases disapproving such fees seem to contain two strong undercurrents. The first is an apparent distrust of private contractual arrangements between creditors and debt collectors. *See, e.g.*, *Stolicker*, 2005 U.S. Dist. LEXIS 32404, at *10 (rejecting defendant's "logic which would allow [the creditor] and its collection attorney, independent of the debtor, to determine what they believed was a reasonable attorney fee and then request that amount in a suit to collect the debt"). There is no obvious reason, in the FDCPA or otherwise, why this should be so; those parties are no less free to make contractual arrangements than any other business entities. The second is an apparent disapproval of a percentage-based fee as somehow improper or unethical. *See, e.g.*, *Kojetin II*, 1999 U.S. Dist. LEXIS 10930, at *5 n.3 (stating in conclusory terms that "[w]hile actual costs may include some provision for a reasonable profit margin for a collection service,

---

[8] The *Stolicker* court concluded that a reasonable attorney's fee could not be a "liquidated sum" or a "sum certain," because such a fee "requires a judicial evaluation of the evidence regarding the fee." 2005 U.S. Dist. LEXIS 32404 at *11 n.1 & *15. The court thus appeared to conclude that the term "reasonable" was without meaning in the absence of judicial interpretation. *See also Brooks v. Auto Sales & Servs.*, 2001 U.S. Dist. LEXIS 8059 (S.D. Ind. June 15, 2001).

[9] *But see Seeger v. AFNI, Inc.*, 2007 U.S. Dist. LEXIS 40304 * 49-50 (E.D. Wis. June 1, 2007) (suggesting in dicta that where a contract permitted reimbursement of "fees of collection agency," if an outside collection agency charged a 15% fee, the creditor could charge that fee to the debtor).

9

such costs cannot be derived from a fee based solely on a percentage of the outstanding debt").

The latter point is somewhat curious. The costs of collection might be paid in any number of ways; the more likely contractual arrangements are an hourly rate, a flat rate, or a percentage-based rate. All of these would fall within the term "collection costs," and there is no obvious reason why one should be permitted and another banned. None are against public policy. Congress could easily have prohibited one or more forms of collection fee arrangements, or capped percentage fees, or required that all such arrangements be "reasonable." It chose not to do so.

Moreover, it is unclear why a percentage-based fee should be singled out for particular opprobrium.[10] Such an arrangement has the virtues of providing an incentive to the debt collector to pursue cases most likely to result in repayment, and therefore arguably maximizing efficiency. It also, of course, minimizes the up-front outlay of the creditor. And such an arrangement is a prominent feature in other contexts—most notably the legal profession.[11]

In short, a percentage-based fee need not be specifically mentioned in the agreement to satisfy the FDCPA's "expressly authorized" requirement. The phrase "collection costs" is broad enough to encompass a percentage-based fee—assuming, of course, that it represents the actual costs of the creditor in collecting the debt. The FDCPA does not require creditors to recite in the agreement every possible way a cost or fee could be determined on a collection that only *might* be necessary to perform in the years to come. The imposition of a percentage-based fee did not,

---

[10] The courts seem to be troubled both by the amount of the percentage and the fact of a percentage-based fee itself. Presumably, if any type of percentage-based fee is prohibited, even a 1% fee—or a 0.1% fee—would be improper.

[11] Attorneys routinely represent clients under a contingency fee arrangement, in which the attorney is paid a percentage of the recovery (although it is not normally added to the recovery).

10

therefore, violate the FDCPA. Summary judgment will enter for defendant on Count 1.

### B.     The Legality of the Collection of the Fee

The fact that the percentage-based fee was expressly authorized by the Agreement, and therefore did not violate the FDCPA, is not the end of the analysis. Plaintiff also alleges that defendant violated the FDCPA by attempting to collect a fee that had not yet been incurred. In other words, plaintiff argues in substance that even if the fee was *authorized*, it had not yet been *incurred* at the time the collection letters were sent. The Court agrees that the undisputed facts establish a FDCPA violation.

The issue may be summarized as follows. In January 2007, at the time the debt was referred to CCS, plaintiff owed $1,545 to DCFU.[12] If CCS successfully collected that amount, it had the right to charge DCFU a 30% fee (or $463).[13] If CCS charged that fee, DFCU had the right to pass on that fee to plaintiff.[14] But at the time the first collection notice was sent, DFCU did *not* owe CCS $463—not yet, anyway. And therefore plaintiff did *not* owe DFCU $2,008 ($1,545 + $463)—again, not yet. It was therefore inaccurate to state that plaintiff owed $2,008 to DFCU in January 2007—or, to state it more precisely, that the "AMOUNT DUE" was $2,008. CCS had no right at that point to collect the fee, and the statement or suggestion to the contrary in the collection letter was false.

---

[12] For the sake of simplicity, the Court will use round numbers.

[13] Also for the sake of simplicity, the Court will ignore the issue of partial payments on the debt.

[14] The contingency fee was based only on that portion "of the account *actually recovered*." CCS Collection Agreement Attachment A: Compensation Schedule (emphasis added). *See also* CCS Agreement ¶ 2 ("CCS shall be entitled to compensation on a withdrawn account only with respect to (a) funds *actually recovered by CCS* prior to receipt of a notice of withdrawal or (b) funds *actually recovered* by Client after receipt by CCS of notice of withdrawal where CCS has obtained a written executed repayment agreement from the account debtor . . . .") (emphasis added).

Of course, if plaintiff did pay the $1,545, he would owe the additional $463. The distinction may therefore seem trivial, or even ridiculous.[15] Among other things, it means that the plaintiff owed $1,545 if he *did not* pay the debt, and $2,008 if he *did*. It also means that the debt collector could not legally collect all sums due in a single transaction (at least without the consent or waiver of the debtor). But that is the result dictated by the statute and the Agreement. CCS accordingly attempted to collect a debt that had not been incurred, in violation of the FDCPA. *See Munoz v. Pipestone Financial, LLC*, 513 F. Supp. 2d 1076, 1083 (D. Minn. 2007) ("Having agreed to pay [the law firm] a percentage of the amount *collected*, [creditor] had not incurred the attorney fees sought in the state-court action when [it] alleged that the fees were due and owing from [the debtor]." ); *Som v. Daniels Law Offices*, P.C., 573 F. Supp. 2d 349, 358 (D. Mass. 2008).[16]

To make matters more complicated, the debt collector cannot ignore the existence of the contingent debt in its collection letters, as that would almost certainly be misleading. For example, a letter that stated or suggested that the debt would be extinguished if plaintiff paid $1,545 would almost certainly be improper. Any collection letter would have to be worded precisely and clearly.

---

[15] The distinction might, however, be significant in certain contexts—for example, if the debtor filed for bankruptcy after incurring the debt, or if the creditor took the account back before the debt collector had recovered any amounts.

[16] Defendant argues that "incurring" a fee is different from "paying" a fee, citing *Northern Assocs., Inc. v. Kiley*, 57 Mass. App. Ct. 874, 877 (2003). There, the court rejected the contention that no attorney's fees had been incurred when, as of the date of the request for an award of fees, the prevailing party had not yet been billed for or paid such fees and there was no evidence of an agreement that such fees would be paid. The court held that fees not yet billed or paid could nonetheless be incurred: "[a]ttorney's fees are 'incurred' when a party renders himself liable to pay for such fees." It did not, however, hold that fees not yet *earned* could be considered "incurred." In other words, the fees in *Northern Associates* were actually owed, whether or not they had been billed or paid. By contrast, defendant here has only a contingency fee agreement, an agreement that requires successful collection as a condition precedent to payment of fees.

12

*See Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 949 (7th Cir. 2004).[17]  But it certainly cannot state that an amount is "due" when, in fact, it is not.

Defendant's motion for summary judgment is therefore denied.  Plaintiff did not move for summary judgment as to this claim; however, as there are no issues of material fact remaining, the issue has been thoroughly briefed, and the issue may be resolved as a matter of law, summary judgment will enter for plaintiff on Count 2.  *See Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 7 (1st Cir. 2007).

### C.     The Alleged Misrepresentation

The above analysis essentially compels the further conclusion that CCS's notices violated the FDCPA as a matter of law because they falsely represented the amount of the debt owed.  *See* 15 U.S.C. § 1692e(2)(A).  As noted, the first notice stated an "AMOUNT DUE" that included collection fees that, at the time it was sent, were not yet recoverable and could not have been collected by the creditor.  Simply stated, it was literally false that Gathuru owed $2,000.44 at the

---

[17] In *Chuway*, a case involving ongoing interest charges, Judge Posner made the following observation:

> Our conclusion does not place debt collectors on a razor's edge, where if they say too little they violate the Act by failing to disclose the amount of the debt they are trying to collect and if they say too much they violate the Act by confusing the consumer.  If the debt collector is trying to collect only the amount due on the date the letter is sent, then he complies with the Act by stating the "balance" due, stating that the creditor "has assigned your delinquent account to our agency for collection," and asking the recipient to remit the balance listed—and stopping there, without talk of the "current" balance.  If, instead, the debt collector is trying to collect the listed balance plus the interest running on it or other charges, he should use the safe-harbor language [suggested in an earlier opinion]: "As of the date of this letter, you owe $ ___ [the exact amount due].  Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.  For further information, write the undersigned or call 1-800- [phone number]."

*Chuway*, 362 F.3d at 949 (quoting *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000)).

time he received CCS's notice. "The FDCPA prohibits a debt collector from misrepresenting the amount of a debt upon which collection attempts are made. A debt collector that inflates the amount of the debt, whether through unauthorized service fees or otherwise, violates this provision of the FDCPA." *Martsolf v. JBC Legal Group, P.C.*, 2008 U.S. Dist. LEXIS 6876, at *26-*27 (M.D. Pa. Jan. 30, 2008) (citing 15 U.S.C. § 1692e(2)(A); *Irwin v. Mascott*, 112 F. Supp 2d 937, 947-48 (N.D. Cal. 2000); *Sandlin v. Shapiro & Fishman*, 919 F. Supp. 1564, 1569 (M.D. Fla. 1996)).

Summary judgment as to the individual claims stated in Count 3 will therefore be granted in favor of plaintiff.

### D. <u>The Bona Fide Error Defense</u>

The FDCPA provides an affirmative defense to debt collectors under certain circumstances. Under the statute, "A debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). The debt collector must prove three elements: (1) that the alleged violation was unintentional; (2) that the violation resulted from a bona fide error; and (3) that the debt collector maintained procedures reasonably adapted to avoid any such error. *See Kort v. Diversified Collection Servs.*, 394 F.3d 530, 537 (7th Cir. 2005). An error is "bona fide" if "it was an error made in good faith; a genuine mistake, as opposed to a contrived mistake." *Id.* at 538.

Both sides have cross-moved for summary judgment as to the validity of the defense in this case. The only materially relevant evidence is an affidavit of Kevin Willis, a Vice President with

CCS, submitted by the defendant. According to Willis, "When CCS adds collection costs to the balances of the placement accounts it receives, its standard operating procedure is to separate the account balance from its collection costs on all correspondences to be sent to a customer." (Willis Aff. ¶ 3). A computer system is used "to ensure that collection costs will be automatically separated from account balances on all correspondences sent to individual customers." (*Id.* ¶ 7). It is undisputed that the collection notices sent to Gathuru failed to "separate the account balance from its collection costs" in a customer correspondence. According to Willis, however, "In most cases, a client requesting that we add collection costs will do so at the outset of its relationship with CCS. However, in the underlying matter, DFCU did not decide at the inception of its business relationship with CCS that it wanted to add collection costs to the account balances it was employing CCS to recover." (*Id.* ¶ 10). "As such, the CCS employee who was contacted by DFCU regarding this issue of adding collection costs was not an implementation employee, but the relationship manager for the particular account. Although trained and knowledgeable in our procedures, that person did not proactively coordinate DFCU's individual account to ensure that collection fees would be separated from account balances for all DFCU consumer accounts on the CCS computer." (*Id.* ¶ 11).

Willis's explanation may thus be summarized as follows: CCS normally handles a customer account in a certain way; because the customer here did not make an up-front decision as to how it wanted the account handled, a different person became involved; that person made a mistake; and no one at the company double-checked or followed-up afterward. Such evidence may be enough to avoid a claim of bad faith, or deliberate wrongdoing, but it is not enough to prove the existence of "procedures reasonably adapted to avoid . . . error." Whatever minimum procedures are

reasonable under the circumstances, surely more is required than reliance on a single person, no matter how well-trained and knowledgeable. *See Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 878 (7th Cir. 1976) (interpreting identical defense in Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*: ("Congress left the exact nature of the preventative mechanism undefined. It is clear, however, that Congress required more than just a showing that a well-trained and careful clerk made a mistake.").

In summary, defendant has not submitted sufficient evidence to demonstrate that it is entitled to assert the affirmative defense of bona fide error. Accordingly, summary judgment will not be denied as to plaintiff's claims on that basis.

### E.     The Claim under Chapter 93A

"A violation of the FDCPA constitutes a per se violation of ch. 93A." *French v. Corporate Receivables, Inc.*, 489 F.3d 402, 403 n.1 (1st Cir. 2007) (citing *Barnes v. Fleet Bank*, 370 F.3d 164, 176 (1st Cir. 2004)); *Som*, 573 F. Supp. 2d at 359. The only issue is whether plaintiff has suffered an actual injury as required under Chapter 93A. "A misrepresentation of legal rights in a consumer contract may indeed be per se 'unfair' or 'deceptive' under § 2 of G. L. c. 93A. But a plaintiff seeking a remedy under G. L. c. 93A, § 9, must demonstrate that even a per se deception caused a loss." *Hershenow v. Enterprise Rent-A-Car Co. of Boston*, 445 Mass. 790, 798 (2006) (internal citation omitted).[18]

Here, the requirements of both causation and injury appear to have been met. The injury claimed is not a financial injury (for example, an out-of-pocket loss or a damage to credit rating).

---

[18] The case law on the subjects of causation and injury under Chapter 93A has not been entirely lucid. *See Hershenow*, 445 Mass. at 802 (Cowin, J., concurring); *id.* at 807 (Greaney, J., dissenting). Nonetheless, it appears that the requirement remains that a plaintiff in a Chapter 93A case must prove both causation and an actual injury.

Instead, plaintiff essentially contends that he has suffered "the invasion of [a] legally protected interest," which constitutes a form of injury under the statute. *See Hershenow*, 445 Mass. at 799 (quoting *Leardi v. Brown*, 394 Mass. 151, 159 (1985)).[19]  A demand for payment of a debt that a consumer did not owe appears to fit within that vague formulation.  Among other things, the making of the demand would be likely to have some kind of negative impact on the recipient, particularly in terms of assertion of legal rights or financial decision-making.[20]  The causation requirement is likewise met, because plaintiff actually received and read the collection notices.  *Cf. Leardi*, 394 Mass. at 158 (finding causation under Chapter 93A even though plaintiffs conceded that they never read or relied on the offending clauses in their residential leases).

In light of the elusive and somewhat ephemeral quality of the causation and injury requirements under Chapter 93A, it is not possible to state with complete confidence that the requirements of the statute have been met.  Nonetheless, it appears that causation and injury have been established, and accordingly summary judgment will enter for plaintiff as to liability on the Chapter 93A claim.

**IV.**    **Conclusion**

For the foregoing reasons, defendant's motion for summary judgment is GRANTED as to Count 1 and DENIED as to all other counts; plaintiff's motion for partial summary judgment is

---

[19] After *Hershenow*, *Leardi* can be read to stand for the proposition that the injury requirement is satisfied when plaintiffs are placed "in a worse and untenable position than they would have been" had there been compliance with applicable law.  445 Mass. at 800.  Causation and injury can also be established by a practice that "could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted."  *Hershenow*, 445 Mass. at 801 (quoting *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 394 (2004)).

[20] Plaintiff's formulation of his injury is as follows:  "Clearly, this deception could deter a reasonable consumer from asserting his/her legal right to question the collection fees, or could cause a reasonable consumer to act differently than he/she otherwise would have, such as by paying fees which otherwise would have been questioned, by contacting the creditor or the collector (as plaintiff did), or seeking legal counsel (as plaintiff also did)."  (Pl. Repl. Mem. at 6).

GRANTED; and summary judgment for plaintiff as to liability will enter on Count 2.

**So Ordered.**

                                           /s/ F. Dennis Saylor  
                                           F. Dennis Saylor IV  
                                           United States District Judge

Dated: March 31, 2009